NEW ORLEANS, APRIL, 1889.                393

Boyd et als. vs. A. & H. Heine et als.

---

No. 10,231.

GEORGE H. BOYD ET ALS. VS A. & H. HEINE ET ALS.

1. Where a suit was brought and one of the plaintiffs was the foreign executor, who had failed to qualify in this State, and an exception was filed to his capacity to stand in judgment and overruled, and the defendants answered, after which letters of dative testamentary executorship were properly issued to a resident of the State, who intervened and joined the plaintiff in the original suit, held that an exception to his capacity was properly overruled. An intervention may be filed at any stage of the case, whether before or after issue joined, provided the intervention does not retard the principal suit. The party intervening may join the plaintiff in doing the same thing, and it is only necessary to have an interest in the success of either party, to entitle the party to intervene.

2. Where a surviving partner or co-obliger sues for the whole amount of a claim and citation is served upon the defendants, that is a judicial notification and sufficient knowledge of the claim which is sought to be enforced and there is a legal interruption of prescription.

3. Where a party receives merchandise and uses the same there is an implied contract to pay the price.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

---

*Merrick & Merrick* for Plaintiffs and Appellees.

---

*Farrar, Jonas & Kruttschnitt* for Defendants and Appellants.

---

The opinion of the Court was delivered by

McENERY, J.   Geo. H. Boyd and Elizabeth Boyd and Harriett Boyd, testamentary executors of Ed. A. Boyd, and residents of the State of

New York, brought suit against Armand and Heinrich Heine, Charles Garvey and Thomas O'Neil and the Pickwick Club, in solido, for the sum of six thousand three hundred and seventy-nine dollars, at 6 per cent interest from July 3d, 1884, with recognition of privilege on the Pickwick Club building in the City of New Orleans. The amount is for cathedral or colored glass placed in the Pickwick Club building.

An exception to the capacity of the foreign executors of Ed. A. Boyd to stand in judgment was filed by defendants. The exception was overruled. It will not be necessary to pass upon the ruling of the court on this exception.

To cure the defect in not having the succession of Ed. A. Boyd properly represented according to the laws of this State, E. T. Merrick, Jr., after defendants had answered, intervened in the suit, joining the plaintiffs, alleging his appointment and qualification in this State as dative testamentary executor in the succession of Boyd. The petition of intervention was accompanied by letters of dative testamentary executorship.

Exceptions by all the defendants were filed to the intervention denying the right of the executor to intervene, or that he had been duly appointed and qualified, or that he had any right whatever to intervene in the suit. The exceptions were overruled and defendants answered pleading a general denial to intervenor's demand, and that the petition of intervention contained matter contradictory to the original petition and could not be maintained.

The exceptions to the intervention were properly maintained. The suit was still pending. An intervention may be filed at any stage of the case, whether before or after issue joined, provided the intervention does not retard the principal suit. C. P. 391.

The party intervening may join the plaintiff in claiming the same thing, and in order to intervene it is only necessary to have an interest in the success of either party. The executor of Boyd had an interest in joining plaintiff and demanding the same thing. All parties in interest by the intervention were made parties to the suit. It was the succession of Boyd which was joined with the plaintiffs in the original suit, but which was joined by foreign executors, who had failed to qualify in this State. It is the same plaintiff, the succession of Boyd, who files an appearance by intervening. There is, therefore, in the intervention, the same plaintiff as in the original suit and who is demanding the same thing. There is, therefore, no contradiction between the original suit

and the petition presented and filed by intervention. Womack vs. Womack, 2 Ann. 339.

Defendants next pleaded the prescription of three years to the half of the claim sued on, being amount of intervenor's interest in the amount claimed. The plea is based upon the fact that in the original suit the succession of Boyd was not represented and the petition of intervention was filed after prescription had barred the claim of intervenor.

The original suit was for the whole amount claimed to be due.

The defendants were properly cited.

Geo. H. Boyd was the surviving partner of the commercial firm lately composed of Geo. H. Boyd and Ed. A. Boyd. The defendants, by the citation served upon them, had judicial notification and sufficient knowledge of the claim which was sought to be enforced against them.

There was, therefore, a legal interruption of prescription by the suit first instituted in which the citations were served on defendants before the term of prescription had commenced. Flower vs. O'Connor, 17 L. 213; Satterly vs. Morgan, 33 Ann. 847; 36 Ann. 847; 40 Ann. 411.

## II.

The facts in this case are that the firm of Boyd & Son furnished cathedral glass and mirrors, which, with other charges and freight added, amounted to $9379, for the Pickwick Club. The Heines were putting up the building for the Pickwick Club, which was to become the lesssee of the building, and to occupy it. Jas. G. Clark was the president of the club. The club never authorized him to contract for any material for the club. In fact they had nothing to do with the erection and ornamentation of the building, further than as its future occupants to see that it was constructed and finished by the Heines suitably for the uses for which it was intended. Jas. G. Clark acted as the agent of the Heines in contracting for the cathedral glass, having been authorized by the agent of the Heines, who resided in this city. His contract was to be limited, for this purpose, to $3000. Boyd & Son had no knowledge of the limitation.

There is no doubt but that the amount of material claimed by the plaintiffs was furnished and put in the clubhouse. And there is no doubt but that the stained cathedral glass has enured to the benefit of the Heines, the owners of the club building.

The Pickwick Club, as it never authorized its president, J. G. Clark, to purchase the cathedral glass, or gave him, by vote or resolution, any instructions in the matter, and as they received no benefit from the furnishing of the glass, and as their president was really acting as the

agent of the owners of the building in making a contract for the same, it is clear that the club cannot be made liable for any portion of said material.

The question of fact to be determined is what were the plans and measurements submitted to Boyd & Son and upon which they based their estimate and made their proposal. On this point there is a vast amount of conflicting testimony. Plaintiffs claim that the proposal made by Boyd & Son and accepted by defendants, was upon a list or measurement mailed to them by J. G. Clark, for 6587½ feet, and the defendants allege it was on a list or measurement made by Garvey & Co., given to J. G. Clark, who submitted the same on the day that the contract was made. This list was for an estimate of 1400 feet.

On May 16, 1883, James G. Clark wrote to Boyd & Son a letter in which he says:

"Enclosed, please find memorandum of colored glass required for the Pickwick Club building and for which I would ask your estimate. Please return the inclosed estimate and oblige,

"JAMES G. CLARK."

In reply to this Boyd & Son made an estimate and forwarded plans, etc., and returned the papers forwraded by Clark.

Clark acknowledged their receipt on June 20th, 1883.

The letter of May 16th contained the list or measurement for 6587½ feet of glass. An estimate for $5500 was made for the work on this list by Boyd & Son.

James G. Clark went to New York, and several days before the contract of 7th September was made, visited the office of Boyd & Son, and not finding Geo. H. Boyd in, left a bundle of papers containing the estimates of measurement made by O'Neil & Garvey. This bundle of papers was returned to Clark's hotel without being opened by Boyd & Son. There is no evidence that they had been informed by Clark of the contents of the package of papers, or that the firm had any knowledge of its contents. There was some negotiation to get Boyd & Son to reduce the estimate they had made on the first list sent to them by J. G. Clark. It is not very probable that they would make a reduction on an estimate for 1400 feet to $3000, when they had calculated $5500 on 858 feet.

On Sept. 1, 1883, James G. Clark, wrote to Gally, the agent of the Heines, that after much trouble and many estimates he could not get the stained glass for less than $2500 or $3000, according to selection, which was more than allowance in specifications  *  *  *  *
He says he has succeeded in reducing their estimate from $5500 to

the above figures, and he requests Gally.to authorize him to accept the proposal. This letter was written on the 1st of September, and contains the conditions of the contract of the 7th of September. Gally wired him to make the best contract he could, with conditions in proper shape, not to exceed $2500 to $3000. From Baltimore he forwarded the proposal of Boyd & Son to Gally, with the information that after many estimates it was the cheapest and best contract he could make.

The following is the contract:

NEW YORK, September 7, 1883.

JAS. G. CLARK, ESQ., N. O., La.

Dear Sir—We beg herewith to hand you our proposition for furnishing the stained cathedral glass for Pickwick Club building, as follows, viz: We agree to furnish Messrs. O'Neil & Garvey, and Mr. M. Gally, for the Pickwick Club building in New Orleans, the stained cathedral glass for all the transoms, stairway and oriel windows, in accordance with plans and measurements, as per list already submitted by Messrs. O'Neill & Garvey. The work to be executed in the most artistic manner and guaranteed satisfactory to Mr. Jas. G. Clark, president, or to be taken out at once and replaced until it meets his approval. All the work to be placed in its proper place in the building, complete in every particular, not later than Nov. 11, 1883, unless afterwards agreed, for the sum of three thousand dollars.

Yours truly,

EDWARD A. BOYD & SONS.

Accepted for Messrs. O'Neil & Garvey and H. Gally.

JAS. G. CLARK, President.

The original list of sizes forwarded to Boyd & Son, upon which to make an estimate, contains a detailed statement of sizes and measurements amounting to 568 7-10. There is no dispute as to the price of the glass on this list amounting to $3000.

Thomas Bowman, a witness for the plaintiffs, says he was present when the contract was made and signed, and that it was based on the list for 658 7-10 feet.

Clark says the list inclosed on May 16, 1883, was preliminary to the obtaining of prices, estimates and designs, and that it did not contain a full estimate. But in his letter he asks for estimates for the glass for the Pickwick building, on measurements inclosed by him, and there is nothing in the letters to induce Boyd & Son to believe that it was only a partial estimate. In the contract it is stated that the same is based on a list "already submitted." Clark's statement is that the list for 1400 feet was submitted on the day and at the time of the contract. While

not stating this fact in this exact language, this is the logical conclusion of his testimony. The reference, then, must have been to a list submitted some date prior to the contract. At all events, Clark was responsible for the error, and as he had authority from the Heines to make the contract, they are responsible for it, and must bear the burden.

Clark was authorized by Gally, the agent of the Heines, and as they have paid a part of the contract, they confirm the act of their agent, Gally.

We are of opinion that the contract was based upon the list first forwarded by J. G. Clark. It is shown that by agreement of the parties, instead of filling the sashes in New Orleans, they were sent to New York to be there filled. After filling sashes to the amount of three thousand dollars, Boyd & Son had complied with their agreement. It is shown by the record that after the contract was signed there were some alterations in the plans, and additional material ordered by letter by J. G. Clark.

Boyd & Son might well conclude that they were dealing with responsible parties, and furnish on account the glass ordered. After having filled sashes to the amount of three thousand dollars, every additional sash, therefore, forwarded to New York, became an implied order for the filling of the same.

"Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that actually imply a consent to such contract. To receive goods from a merchant without express promise and to use them, implies a contract to pay the value." R. C. C. 1816.

Defendant Heines have received the cathedral glass, and have kept it for several years, and have used and enjoyed it in the adornment and ornamentation of their building, enhancing its value and increasing their revenue. They must pay the price, at the rate for which the same materials had been furnished. Defendants prove that the glass was furnished at the same rate.

The defendants are not liable for the freight, as the contract stated that the glass was to be put in by the plaintiffs in the City of New Orleans. A. & H. Heine have paid on the contract $1087 82, and a bill for freight amounting to $62 15. The amount for alteration of plans and designs is not sufficiently proven.

The amount due plaintiffs and intervenors for the amount of glass furnished in excess of the 558 10-7 feet, we fix at $6152 62, adopting the

calculation of the district judge, and they are entitled to a judgment against A. & H. Heine for said amount, less the above credits. The Pickwick Club purchased mirrors for which they alone received the benefit and are responsible.

It admits an indebtedness of $2142 68. On this amount they have paid $1912 93, leaving a balance due of $229 75.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and we now proceed to render such judgment as should have been rendered by the lower court. It is now ordered, adjudged and decreed that the plaintiff and intervenor do have and recover judgment against Armand Hiene and Heinrich Heine for the sum of six thousand one hundred and fifty-two dollars and sixty-two cents, amount of colored cathedral glass sold and delivered to said Armand and Heinrich Heine, less a credit of eleven hundred and forty-nine dollars and ninety-seven cents, with six per cent interest from judicial demand. And that said plaintiff and intervenor do have and recover judgment against the Pickwick Club for the sum of twenty-one hundred and forty-two dollars and sixty-eight cents, less a credit of nineteen hundred and twelve dollars and ninety-three cents, with five per cent interest from judicial demand.

The defendants, A. & H. Heine and the Pickwick Club, to pay equally the costs of both courts.

## On Rehearing.

Fenner, J. We granted a rehearing on the suggestion made by defendants of an error of calculation, committed by the district judge and perpetuated by us, in estimating the amount due by defendants.

No useful purpose would be subserved by going into details. It suffices to say that the testimony in the record, including that of Mr. Boyd himself, satisfies us that the original contract to furnish 658 30–100 feet of glass for $3000, meant feet measured according to the New Orleans standard, i. e. the *superficies* of the frames to be filled, whether elliptical or otherwise. This appears from Garvey's list, which was the basis of that contract and which was made by him according to the New Orleans standard. As the price per foot thus measured is the admitted price of the additional glass furnished, there was error in allowing the same price according to a different standard of measurement.

It is, therefore, ordered that our former decree be amended so as to reduce the amount of the judgment allowed against A. & H. Heine from $6152 62 to $5172 62, subject to credits allowed therein, and that, as thus amended, our former decree be maintained.