**BROUSSARD, Appellant, v. ROSENBLUM**

---

(July —, 1926. Opinion and Decree.)
(November 2, 1926. Rehearing Refused.)
(January 4, 1927. Writs of Certiorari and Review denied by Supreme Court.)

---

*(Syllabus by the Court)*

1. **Louisiana Digest—Appeal—Par. 565, 571, 574.**

All cases on appeal to this court shall be tried and considered solely upon the original record and pleadings, save as to exceptions taken, that may be pleaded at any period of a cause, and the proof of which will appear from the mere examination of the record.

2. **Louisiana Digest—Appeal—Par. 574; Estoppel—Par. 2, 53.**

A plea of estoppel may be filed in and considered by an appellate court, insofar as such plea is based upon matters in evidence in the court of original jurisdiction.

3. **Louisiana Digest—Estoppel—Par. 2, 53; Appeal—Par. 574.**

This court can not consider documentary evidence which has not been offered in the trial court, even though such documents be annexed to a plea of estoppel filed herein.

4. **Louisiana Digest—Judgment—Par. 9; Minors—Par. 177.**

While the laws governing pleading in the Louisiana courts do not specifically require the petitioner to set forth the majority of defendant, it is, of course, elementary that a valid judgment can not be secured against a minor, personally sued and cited, and without the intervention of his tutor or curator.

5. **Louisiana Digest—Minors—Par. 2, 3; Estoppel—Par. 48.**

The status of majority can not be created by estoppel.

6. **Louisiana Digest—Prescription — Par. 189, 190.**

Suit against, with citation to and service upon, a minor, will not interrupt the prescription of an action against his father, though father and son reside together and it be shown that the father has personal knowledge of such suit.

7. **Louisiana Digest—Minors—Par. 178, 179, 180; Action—Par. 12.**

The father, or in the event of his death, the mother of a minor may, as long as the minor child be under his or her authority, appear in every kind of civil suit in which the minor may be interested, but failure to do so does not present any legal ground for complaint by a third person in no way interested in the minor's welfare.

8. **Louisiana Digest—Evidence—Par. 52.**

Where the plaintiff demands a large sum of money for injuries, for which she claims the defendant is responsible, and suit against the defendant (a minor) is filed, we know of no legal obligation upon either side to give to the other any information or assistance, save such as is exacted under the processes provided by law.

Appeal from Civil District Court, Division "C". Hon. E. K. Skinner, Judge.

Action by Miss Louise Broussard against Hile Rosenblum.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Woodville and Woodville, of New Orleans, Sandoz and Sandoz, of Opelousas, attorneys for plaintiff, appellant.

St. Clair Adams, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J., dissents for written reasons.

JOHN MAY, judge ad hoc.

On March 12, 1924, plaintiff, Miss Louise Broussard, filed suit against Leo Rosenblum for Nine Thousand ($9000.00) Dollars damages for personal injuries alleged to have been suffered in an automobile accident, which occurred September 23, 1923, such suit being No. 151,552 of the docket of the Civil District Court for this parish.

In Paragraph 1 of plaintiff's petition it is alleged:

"That Leo Rosenblum, of lawful age and a resident of this city and state, is justly and truly indebted unto your petitioner in the full sum of Nine Thousand ($9000.00) Dollars, etc."

Domiciliary service was made upon Leo Rosenblum on March 13, 1924, by leaving the petition and citation at his residence in the hands of his mother.

On March 25, 1924, Leo Rosenblum, appearing through counsel, filed an answer admitting or denying, paragraph by paragraph, the allegations of the petition.

The answer to Paragraph 1 of plaintiff's petition is as follows:

"That defendant denies specifically each and every allegation of fact contained in Article 1 of plaintiff's petition, just as if he had separated each individual allegation and denied the same categorically."

This case came on for hearing on February 12, 1925, at which time defendant presented proof of his minority.

Plaintiff's counsel then asked permission to file a supplemental petition, making defendant's father, Hile Rosenblum, defendant, which motion was denied, and the court thereupon rendered judgment "dismissing and rejecting plaintiff's demand as in case of non-suit".

No appeal was taken from such judgment, but on February 19, 1925, plaintiff filed suit No. 156,575 of the docket of the Civil District Court, upon the same alleged cause of action, but against Hile Rosenblum, who thereafter, on February 27, 1925, appeared through counsel and plead: First, "No Cause of Action", and second, the prescription of one year.

Such exceptions came on for hearing on March 11, 1925, and on March 17, 1925, the District Court rendered judgment, maintaining the Plea of Prescription, and dismissing plaintiff's suit.

In this second suit, namely, that brought against Hile Rosenblum, the father of the minor, plaintiff's petition, in Articles 9, 10, 11 and 12 thereof, recites the filing of the first suit and makes the record in that suit a part of the petition. Also reviews the service of such first petition and the testimony taken in the first case, showing that such petition and citation therein were sent by Leo Rosenblum to an insurance company in this city.

The remaining portions of such articles of plaintiff's petition are devoted to allegations of which there is no proof in the record and to the conclusions of the pleader, that under the facts alleged, prescription of the cause of action sued upon was interrupted as against the father of Leo Rosenblum.

From the judgment in the second suit, maintaining defendant's Plea of Prescription, plaintiff has appealed and the matter thus comes before us.

Some time after taking and perfecting her appeal, or, to be exact, on January 16, 1926, plaintiff filed in this court a plea entitled "A Plea of Estoppel as Against the Plea of Prescription Filed by the Defendant in this Cause", to which plea are annexed a number of original and carbon copies of letters which purport to have been written by plaintiff's attorneys to Leo Rosenblum; by the Aetna Casualty and Surety Company to plaintiff's counsel; by plaintiff's counsel to said insurance company; by plaintiff's counsel to counsel for the defendant, and also certain inter-office correspondence between local counsel for plaintiff and plaintiff's counsel in Opelousas, Louisiana.

Upon the day of hearing by this court, counsel for the defendant filed a motion asking that the court, for the reasons therein given, order the Plea of Estoppel stricken from the record and returned to plaintiff.

## OPINION

Plaintiff has taken no appeal from the judgment for defendant in her suit against Leo Rosenblum, a minor, and we are therefore in no way concerned with the issues therein presented, except insofar as it be plaintiff's contention that the answer filed for or by Leo Rosenblum in that suit was in such form as to mislead plaintiff and keep her in ignorance of the proper party defendant, until prescription had run against her claim, and except further as to plaintiff's contention that such suit against Leo Rosenblum and the citation to and domiciliary service upon him, serve to interrupt prescription of an action against his father.

The following issues are therefore presented for our determination:

1st. May we consider a "Plea of Estoppel" filed for the first time in this court, and based largely upon documents attached thereto, which were not in evidence in the court of original jurisdiction?

2nd. Is the defense of minority a matter of special plea, or is it a matter of defense on the merits, or a plea which may be made at any stage of the proceeding, or a question which may be raised by way of injunction against the execution of or suit to set aside a judgment?

3rd. When suit was brought against this minor, and domiciliary service made upon him by leaving a copy of the petition, and the citation addressed to him, at his residence in the hands of his mother, did he or did his father owe any legal duty to plaintiff to appraise plaintiff of his, defendant's minority?

4th. Does the record disclose any action by defendant, Leo Rosenblum, a minor, or by his father, Hile Rosenblum, or by counsel appearing for Leo Rosenblum, which could be deemed to interrupt prescription or to create an "Estoppel"?

5th. Did suit against Leo Rosenblum, a minor, and citation addressed to him, with domiciliary service upon him, interrupt the running of prescription of an alleged cause of action against his father?

Taking up these issues in the order named, we will first consider the Plea of Estoppel, with exhibits annexed, filed in this court.

Section 27 of Article 7 of the Louisiana Constitution of 1921 provides that "all cases on appeal to the Courts of Appeal, shall be tried on the original record and pleadings, and evidence", and further provides that the rules of practice regulating appeals to and proceedings in the Supreme Court shall apply in the Courts of Appeal, so far as they may be applicable, unless otherwise provided.

Article 902 of the Code of Practice of Louisiana provides that although in general parties before the Supreme Court are not allowed to plead other matters than those which were before the inferior court, nevertheless, there may be a departure from this rule when the exception taken is one of those which may be pleaded at any period of a cause, and the proof of it appears by the mere examination of the record.

In Wilkin-Hale State Bank vs. Tucket, et al., 148 La. 980, 80 South. 239, the Supreme Court said that:

"The general rule applying to this case is that an appellate court reviewing a judgment of a court of original jurisdiction should not consider as evidence in the case any document that does not form a part of the pleadings and was not offered in evidence on the trial of the case", and again

In Wunderlick, et al., vs. N. O. Ry. & Lt. Co., et al., 143 La. 626, 79 South. 80, it is stated that:

"Ex parte allegations contained in pleadings filed in this court as to facts aliunde the transcript, cannot be considered by this court."

See also Dalley vs. Continental Supply Co., 155 La. 113, 98 South. 859; Succession of Henry J. Forstall, 35 La. Ann. 97.

In the case of Jacobs Bros. Walkover Boot Shop vs. Frances Bel, 1 La. App. 14, this court said:

"The appellate court cannot consider documentary evidence which has not been offered in the trial court, whether the same

be annexed, to a petition as part thereof, or otherwise."

And again in O. K. Realty Co., Inc., vs. John A. Juliani, Inc., 1 La. App., p. 1, we find that:

"An appellate court cannot consider any document which was not offered in evidence on the trial of the case."

It is our opinion, therefore, that while a Plea of Estoppel may be filed in and considered by this court, we cannot give any consideration whatever to letters or exhibits of any character attached to and filed with such plea, when such exhibits were not in evidence in the court below.

The Plea of Estoppel filed in the instant case is based partly upon matters appearing in the record, but primarily upon the letters attached, and while we might be able to consider so much of the plea as is based upon matters appearing in the record, such consideration would necessarily go no further than as to the matters already before us by the plaintiff's appeal from the judgment of the District Court, maintaining defendant's Plea of Prescription.

The next question for consideration is whether a defense of minority is a matter for special plea, or is it a matter of defense on the merits, or a plea which may be made at any stage of the proceeding, or an issue to be raised even after judgment.

Counsel for plaintiff contend that the minority of Leo Rosenblum should have been plead specially and sufficient time allowed to plaintiff to bring her evidence, and in support of this contention refer us to Article 346 of the Louisiana Code of Practice.

Turning to such article we find that the peremptory exceptions founded on law may be pleaded in every stage of the action, previous to the definitive judgment, but they must be pleaded specially, etc.

Under Article 345 of the Code of Practice, however, we find that peremptory exceptions founded on law are those which, without going into the merits of the cause, show that the plaintiff cannot maintain his action, either because it is prescribed, or because the cause of action has been destroyed or extinguished.

We find, therefore, that the defense of "Minority" is not a peremptory exception founded on law, but even if it were, that it may be pleaded at any stage of the proceeding, or even after definitive judgment.

This brings us to a consideration of the question raised by plaintiff as to whether or not the minor or his father or his counsel were under any legal obligation to plaintiff to appraise plaintiff of defendant's minority, and the further question whether the record discloses any action by defendant, Leo Rosenblum, a minor, or by his father, Hile Rosenblum, or by counsel appearing for Leo Rosenblum, which could be held to interrupt prescription.

An action against a minor must be brought directly against his tutor, or against a curator ad hoc, named to defend the suit. (Code of Practice, Articles 115-116.)

It is the duty of a prospective party plaintiff to ascertain the status of the proposed defendant, and if such defendant be a minor, to proceed against such minor through his tutor or curator ad hoc.

It is true that the laws governing pleading in this state do not specifically require that the petitioner set forth the majority of the defendant, but it is of course elementary that no valid judgment can be secured against a minor personally sued

and ·cited and we know of no presumption of majority, nor can the status of majority be created by estoppel.

Be this as it may, however, plaintiff, in the instant case, saw fit to allege that de-defendant, Leo Rosenblum, was of lawful age, and Leo Rosenblum, through counsel, saw fit to deny such allegation of majority by way of answer.

Plaintiff's counsel say that a minor is under the supervision and control of his parents, until his majority or emancipation, and that the law charges those parents with duties and obligations most onerous in character, and even holds them liable for the minor's torts and compels the father, or mother if the father be deceased, to appear on behalf of the minor child in every kind of civil suit in which he may be interested.

Article 235 of the Civil Code does not say that the father or mother must appear on behalf of the minor child, but that they may, as long as their children are under their authority, so appear in every kind of civil suit in which the minor may be interested.

As a matter of fact, however, the minor Leo Rosenblum was never in any danger from the suit brought against him, and while it may be the parents' duty to their minor child to appear and protect him in every suit that may be brought against him, it would seem to us that their failure to do so would be more a matter between the parents and child than a proper cause of complaint on the part of the plaintiff in an unauthorized suit against such minor.

We are, however, saved the necessity of any detailed consideration of the various contentions made by plaintiff and the vari-

ous authorities referred to as supporting such contentions for the reason that this matter has already been fully considered and passed upon in the case of Jung vs. N. O. Ry. & Lt. Co., et al., 145 La. 527, 82 South. 870, in which an almost identical condition was presented.

In that case, plaintiff received certain injuries resulting from being run into by an automobile owned and driven by one H. P. Arceneaux.

Plaintiff made demand upon and brought suit against the Fox River Butter Company, believing Arceneaux to be its agent and employee, as the name Fox River Butter Company appeared upon the automobile and upon the building where Arceneaux was employed.

The Butter Company did not, in response to plaintiff's demand, advise her of her error, and in response to the suit, filed the equivalent of a general denial.

Upon the trial of the case, defendant disclosed and proved the fact that Arceneaux was not in its employ, and plaintiff thereupon contended that it· was defendant's duty to advise her of the true facts and that it should not be allowed, after prescription had run, to deny Arceneaux's agency.

And here we quote from the opinion of Justice Dawkins upon this contention of plaintiff:

"While it would have been more courteous and it seems the natural thing to have done, for the defendant to have properly notified plaintiff that Arceneaux was not in its employ, yet, in a controversy of this kind, where the plaintiff demands a large sum of money for injuries, for which she claims the defendant was responsible, and a law suit ensues, we know of no legal obligation resting upon either side to give to the other any information or

assistance, save such as is exacted under the processes provided by law. A law suit is a contest in which either side is entitled to avail himself of all the lawful weapons at his command, and neither owes any duty to the other to disclose any part of his case."

Plaintiff further contends, however, that the minor, Leo Rosenblum, in the instant case, was without any legal right to defend the suit against him, or to urge his minority, except by appearance in court through his father.

Under the authority of the just quoted from case, the father was not under any legal obligation to advise plaintiff of his son's minority in order to defend his minor son in a suit in which no valid judgment could be rendered against him, and whether or not any right exists in the minor to appear through counsel and make a defense, is not, under the circumstances, an issue in this cause, for he did appear and admitted or denied every allegation of plaintiff's petition, including his denial of plaintiff's allegation that he, the defendant, was of lawful age.

As to plaintiff's contention that defendant's counsel did, by way of various and sundry delays and continuances, put off the disclosure of defendant's minority until prescription had run against defendant's father, we find no substantiation thereof in the record.

In the first place, defendant did positively deny the allegation of the petition that he was of lawful age, and in the second place, according to the certificate of the minute clerk of the trial court, it appears that the case of plaintiff against Leo Rosenblum was not posted for hearing until May 30, 1924, at which time it was continued to June 13, 1924, and then continued to the foot of the docket, its next posting being on January 15, 1925.

There is nothing in the record to show for what reasons the case was continued on May 13 and June 13, 1924, nor at whose request such continuances were granted, although it is suggested by way of brief and in oral argument that counsel for defendant was actively engaged in the trial of a case in the Supreme Court on those days. And so far as any further continuances are concerned, we are not interested in such as the prescriptive period would have run, in any event, in September.

The last question for consideration is, did suit against Leo Rosenblum, a minor, with citation addressed to him and domiciliary service upon him, through his mother, interrupt prescription of an action against his father?

Civil Code, Article 3518, provides that a legal interruption takes place when the possessor has been cited to appear before a court of justice, etc., and in White vs. McGuillan, 12 La. 534, the Supreme Court held that the same rule applies to the prescription liberandi causa. Counsel for complainant say that citation to a defendant, no matter how informal, or insufficient to serve as the basis of a suit and judgment, nevertheless suffices to interrupt prescription. (Vernon vs. Ill. Central R. R. Co., 154 La., p. 372, 97 South. 493, and that

The law considers the fact rather than the form of judicial notice in the matter of interruption of prescription. (King vs. Guines, 118 La. 344, 42 South. 959.)

We are also referred to a number of other decisions holding that, while various forms of defective citations and services render judgment thereunder impossible, they are nevertheless sufficient to interrupt prescription. But in none of these decisions has there been a failure of "judicial notice".

This entire question is considered and discussed in the recent case of Anding vs. Texas & P. Ry. Co., et al., 158 La. 412, 104 South. 190, and in which the authorities are fully reviewed and analyzed.

In this case plaintiff first brought suit against the Texas & Pacific Railway Co. Seven days after the filing of suit plaintiff filed a supplemental petition, in which she alleged that she had learned that the Texas & P. Ry. Co. was in the hands of receivers, naming them, and she prayed that the company be cited through said receivers to appear and answer the original and supplemental petitions, and that there be judgment against the company and against its receivers, as such. After the filing of the supplemental petition, the clerk issued a citation directed to the company, through its receivers, summoning the company, through them, to comply with plaintiff's demand, to answer the petitions filed by plaintiff.

Thereafter the company filed an exception of no cause of action, for the reason that at the time of the accident, the company was in the hands of receivers, and at about the same time the receivers excepted to the suit on the ground that they had not been properly cited.

At a later date, and more than a year after the happening of the accident, plaintiff filed a second supplemental petition, in which she alleged for the first time that the accident complained of occurred while the railway was being operated by receivers, and that the negligence alleged was that of the receivership, and in this second supplemental petition, she prayed for judgment against the receivers and had them cited. Thereafter the receivers appeared and filed a Plea of Prescription of one year.

There were various other exceptions taken and considered but none of any interest to us in the instant case. And the court, in its opinion, considers Article 3518 of the Civil Code, providing for the legal interruption of prescription, and holds that under this article it is not necessary, in order to interrupt prescription, that the citation be technically correct, or even sufficiently correct to form the basis of a judgment, nor is it necessary that the petition state a technically complete cause of action (referring to and quoting from Guebel vs. Town of Lafayette, 118 La. 494, 43 South. 63; McCubbin vs. Hastings, 27 La. Ann. 713; King vs. Guines, 118 La. 344, 42 South. 959; Vernon vs. Ill. Cent. R. R. Co., and Boutrie vs. Director General of Railroads, 154 La. 370, 97 South. 493; and now we quote directly from the opinion of the court:

"We are also of the opinion that the original and first supplemental petitions conveyed to the receivers sufficient knowledge of plaintiff's claim against them to interrupt prescription. The original petition stated a complete cause of action against the railway company. The first supplemental petition contained a prayer for judgment against the receivers. All that may be said to be lacking in the latter, when read in connection with the original petition, to show a complete cause of action against the receivers, was the allegation that at the time of the accident the railway company was in the hands of receivers and that the alleged accident was due to the fault of receivers instead of to the fault of the railway company. However, the original petition alleged the date of the accident, and as on that day the railway company was in the hands of receivers, and had been for four years prior thereto, the absence of that allegation did not have the effect of preventing the interruption of prescription, for the allegation setting forth the date of the accident and the service of the petition, containing that allegation, conveyed to the receivers, knowledge, judicially, that the accident occurred under the regime of the receivership, and the demand for judgment against them conveyed to them knowledge that they were

being held by plaintiff responsible for the alleged negligence and accident that occurred under their regime."

This decision goes further than any of those preceding it and comes nearest to the support of plaintiff's contention, but even here we find that the first supplemental petition filed and served before the lapse of the prescriptive period contained a prayer for judgment against the receivers, and therefore when read in conjunction with the first petition, contained the required "Judicial Notice" to the receivers of the claim and that such claim was being made upon them.

In the instant case, the suit against, and the citation directed to, and the domiciliary service upon the minor, Leo Rosenblum, did not, in any way, constitute "judicial notice" to the minor's father that there was any claim being made against him. In fact, no claim whatever was made against the father, Hile Rosenblum, and no matter how intimate his knowledge may have been that a suit had been brought against his son, he can in no way be deemed to have received judicial notice of a claim against himself, when such a claim was never, in fact, made. To hold otherwise would be tantamount to dispensing altogether with the necessity of "judicial notice" and demand.

For the reasons assigned, the judgment appealed from is affirmed.

---

## DISSENTING OPINION OF CLAIBORNE, J.

The case of Jung vs. N. O. Ry. and Fox River Co., 145 La. 727, 82 South. 870, has no application to this case. The court thus states the issue to be decided in that case on p. 730:

"The issue here, therefore, must turn upon the question of whether or not, as a matter of fact, Arceneaux was the agent of the Fox River Butter Company and at the time engaged in attending to its business."

The plaintiff in that case was knocked down by an automobile driven by Arceneaux. Under the belief that Arceneaux was in the employ of the Fox River Company, the plaintiff sued the Fox River Company as liable for the negligence of Arceneaux as its employee. The Fox River Company answered by a general denial.

In rejecting plaintiff's demand the court said on p. 732:

"Plaintiff has failed to sustain the burden of proof to the extent of showing that Arceneaux was the agent of the Fox River Butter Company. Having found that Arceneaux was not the agent of the Fox River Butter Company it becomes unnecessary to determine the question of negligence."

Plaintiff's demand against the Fox River Butter Company was therefore rejected, and properly so.

The burden of proof was upon the plaintiff to establish that Arceneaux was the employee or agent of the Fox River Co. He who alleges agency must prove it, with or without answer. 2 C. J. 915 S. 635—8276 Orl. App. 29 A. 363; McCarty vs. Straus, 21 La. Ann. 592; Dawson vs. Landreaux, 29 La. Ann. 363; Rubenstein vs. Files, 146 La. 734, 84 South. 33.

But the burden is upon a defendant to sustain the plea of minority. Like all exceptions it must be specially pleaded. C. P. 327-333-336-346; Patterson vs. Frazer, 8 La. Ann. 512; Smith vs. Braun, 37 La. Ann. 225 (228).

The balance that was said in the Fox River case concerning the absence of duty on the part of a defendant to disclose the

facts of a case was not necessary for the decision of the case, and was therefore obiter and only the individual opinion of the judge who decided the case.

In the Fox River case the defendants did nothing to mislead the plaintiff. While in this case, although the defendant was a minor and incapable of standing in judgment, an answer was filed in his name by the same counsel who represents the defendant herein, thus throwing plaintiff off of his guard.

On the other hand, in the case of Bastrop State Bank vs. Levy, 106 La. 587, 31 South. 165, Judge Blanchard said:

"Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them. It is only when the truth is ascertained that the law can be properly applied in the just settlement of disputes. Litigants owe the duty of assisting in every legitimate way in the elucidation of the truth."

And in the case of Baham vs. Stewart Bros. 109 La. 999, 34 South. 54, Chief Justice Nicholls, on p. 1011, said:

"It having been established that a petition, with a citation accompanying the same, addressed to A. J. Baham, was served upon the wife of A. J. Baham, it was his duty, if he was not the party concerned in the subject matter, to have appeared in the District Court and excepted to the citation."

It is the duty of courts to teach litigants not only their rights but their obligations.

But the question before us for determination is not whether the plaintiff was entitled to a judgment against the minor in the first suit, or whether she is entitled to a judgment against the minor's father, the defendant in the present suit, but whether the prescription of plaintiff's action against

the father, defendant, has been interrupted and suspended by the former suit against the minor.

It is true that service of citation and petition addressed to the defendant are essential, as a rule, to the validity of a judgment, and that knowledge of a suit will not supply the want of them, however clearly brought home to them.

Yet there are exceptions to that rule when the defendant has remained silent when he should have spoken.

Thus it has been held that a citation rroneously addressed to "Joseph N. Robert" instead of "Francois J. Robert" and a judgment based thereon against Francois J. Robert may be a valid judgment against Francois J. Robert, in the presence of the silence of the latter in proper time to plead the error. Formento vs. Robert, 27 La. Ann. 489.

In the case of City vs. Cordeviolle, 10 La. Ann. 727, where the defendant was sued for city taxes and notified by publication under a special law in the name of "Cordoviatti" and judgment obtained against him in that name, the Supreme Court set aside the judgment on account of that error but said:

"It is hardly necessary to observe that a case of this kind differs somewhat from a suit commenced by citation, where the personal service of the citation would demonstrate who was intended to be made defendant."

But the question before us is not whether the citation addressed to the minor in the prior suit would have justified a judgment against the father, the present defendant. Evidently not. The question is whether the citation and petition addressed to the minor were sufficient to interrupt the pre-

scription against the father for the purposes of the suit under consideration.

Article C. P. 3518 (3484) reads as follows:

"A legal interruption takes place when the possessor has been cited to appear before a court of justice, on account either of the ownership or the possession; and the prescription is interrupted by such demand, whether the suit has been brought before a court of competent jurisdiction or not."

One thing are the formalities essential to obtain a valid judgment. Forma dat esse rei. Another are the directions for suspending prescription by legal proceedings.

These are not essential.

"Numerous decisions have established a distinction between the technical sufficiency of a citation, as a basis for the maintenance of proceedings and judgment and its sufficiency for the purpose of interrupting prescription. Citation for the purpose of interrupting prescription need not be technically perfect in form or service." 8 La. Dig., p. 797, s. 189; 6 id., p. 200, s. 193; Tessier's Digest, p. 45, s. v; Bergstrom vs. Spielman, Orleans Appeal, No. 7708 Bk. 56 Orl. App.; Norwood vs. Lake Bisteneau Oil Co., 145 La. 828, 83 South. 25; State vs. Dyer, 154 La. 379, 97 South. 563; Anding vs. T. & P. R. R. Co., 158 La. 418, 104 South. 190; King vs. Guines, 118 La. 346, 42 South. 959; Babin vs. Lyons Lbr. Co., 132 La. 876, 61 South. 855.

In the case of Anding vs. T. & P. Ry. Co., 158 La. 412, suit was filed September 1, 1921. The plaintiff alleged that on October 27, 1920, while said railway was in the hands of receivers, she was injured by the negligence of defendant's employees; she prayed for damages against the defendant railway. On September 8, seven days later, plaintiff filed a supplemental petition in which she alleged that the defendant was in the hands of a receiver, and she prayed

that the defendant railway be cited through said receivers and for judgment against the railway and the receivers as such. Citation issued directed to the railway, through its receivers, on September 9 the sheriff served a copy of the citation and petition on the railway, through its receivers. On October 20 the railway filed an exception that the petition disclosed no cause of action "for the reason that" at the time of the accident the company was in the hands of receivers and therefore is not responsible for the alleged accident". Two days later, and more than a year after the accident, plaintiff filed a supplemental petition in which she alleged for the first time that the accident happened while the railway was operated by the receivers who were therefore liable, and she prayed that they be cited and for judgment against them. The receivers filed a plea of prescription of one year.

The District Court maintained the exception of no cause of action filed by the railway company and dismissed the suit as to it.

It also maintained the plea of prescription filed by the receivers and dismissed the suit as to them. The Court of Appeal affirmed both those decisions and the plaintiff took a writ to the Supreme Court.

The Supreme Court affirmed the judgment in favor of the railway company finding that "the negligence which caused the accident was chargeable directly to the receivership. Under these facts the railway company was not liable". See p. 416.

The receivers pleaded that prescription had not been interrupted as to them, by the original petition and citation addressed to the railway company, when they should have been directed to them, and because they "did not convey to them sufficient

knowledge of the claim against them to interrupt prescription".

The Supreme Court reversed the opinion and decrees of both the District Court and the Court of Appeal and decided that prescription had been interrupted by the petition and citation addressed to the railway company and served upon the receivers, although the railway company was not liable, and the receivers alone were liable.

In support of that opinion the court cited and analyzed a number of cases. It quoted Vernon vs. I. C. R. R., 154 L. 370, 97 South. 493, where the facts and the issues appear to have been the same. There the plaintiff filed a first suit against the railroad company for causing the death of her son. The citation was addressed to the Director General and served upon him. In a second suit filed more than a year after the death of her son, she sued the Director General of Railroads for the same cause of action. The Supreme Court held that prescription had been interrupted by the first suit and said:

"On the whole we think the Director General was sufficiently informed by the citation and petition served upon him of the nature of plaintiffs' claim and of the fact that she was demanding payment thereof; in other words, he was cited to appear in a court of justice on account of said claim, sufficiently to interrupt prescription thereon."

In affirming the Vernon case, the Supreme Court in the Anding case said on p. 422:

"We are also of the opinion that the original and first supplemental petitions conveyed to the receivers sufficient knowledge of plaintiffs' claim against them to interrupt prescription. The original petition stated a complete cause of action against the railway company. The first supplemental petition contained a prayer for judgment against the receivers. All

that may be said to be lacking in the latter, when read in connection with the original position, to show a complete cause of action against the receivers was the allegation that at the time of the accident the railway company was in the hands of receivers and that the alleged accident was due to the fault of the receivers instead of to the fault of the railway company. However the original petition alleged the date of the accident; and as on that day, the railway company was in the hands of receivers, and had been for four years prior thereto, the absence of that allegation did not have the effect of preventing the interruption of prescription, for the allegation, setting forth the date of the accident, and the service of the petition containing that allegation, conveyed to the receivers knowledge, judicially, that the accident occurred under the regime of the receivership, and the demand for judgment against them conveyed to them knowledge that they were being held by plaintiff responsible for the alleged negligence and accident that occurred under their regime." See also Thompson vs. N. O. Const. and T. Co., 24 La. Ann. 382.

In the case of Gueble vs. Town of Lafayette, 118 La. 494, 43 South. 63, quoted in Babin vs. Lyons, 132 La. 877, 61 South. 855, where the citation was addressed to, and served upon the mayor, the court said:

"There can be no doubt that through those papers he received judicial knowledge of the fact that the plaintiff had filed a demand against the town of Lafayette in the District Court, what that demand was for, and what the petition prayed for. He was as fully informed on these points as if the citation which he received had been addressed to the town of Lafayette, and had been placed in his hands. He was the proper person and the only necessary person to whom that knowledge should be conveyed. The fact that the citation was not addressed to the town of Lafayette did not do away with the knowledge which the papers, which were actually served upon him, had conveyed."

In King vs. Guynes, 118 La. 344, 42 South. 959, the court said:

"The law considers the fact rather than the form of judicial notice in the matter of the interruption of prescription. The word "cited" as used in C. C. Art. 3518 has been construed to mean any kind of judicial notice which brings home to the defendant knowledge of the demand instituted against him, such as notice of seizure and sale in executory proceedings or seizure and notice under execution of a twelve months' bond." Kings vs. Labranche, 35 La. Ann. 305; Boyd vs. Heine, 41 La. Ann. 395, 6 South. 714; Whitney Iron Works vs. Reuss, 40 La. Ann. 112, 3 South. 500.

A suit against the same defendant personally will interrupt prescription against him as executor. The cause of action is the same, the thing demanded is identical, and the parties are substantially the same. Hart vs. St. Charles Street R. R. Co., 37 La. Ann. 769.

In the case of Blanc vs. Dupre, 36 La. Ann. 847, the court decided that a suit filed by a curator, whose appointment was a nullity, interrupted prescription. Adopting the language of Flower vs. O'Connor, 17 La. 219, decided in 1841, the court said:

"In order to determine the extent and effect of a legal interruption, we must inquire more particularly into the object and cause of the action than into the right of the plaintiff, the manner in which it is prosecuted, and the competency of the court in which it is instituted, and endeavor to ascertain how far the knowledge of the titles on which the action is founded has been brought home to the defendant by the judicial demand; and we do not hesitate to conclude that if it be established that the defendant has been judicially notified of the titles which are the foundation of the demand, so as to acquire a sufficient knowledge of the rights which are sought to be enforced against him by a suit, there results from said suit a legal interruption in favor of those to whom such rights belong." State vs. Doherty, 25 La. Ann. 118.

In Satterley vs. Morgan, 33 La. Ann. 848, the court said:

"This court has always given a liberal construction to that clause of Art. 3518 Rev. C. C., which declares that 'a legal interruption takes place when the possessor has been cited to appear before a court of justice'."

In Berens vs. Executors, 31 La. Ann. 115, the judge quoted French authorities as follows:

"The expressions of our Article (C. N. 2244) citation in a court of justice, must be understood in a broad sense; it would have been more exact to say, a demand in a court of justice." Trop. Presc. No. 562; Merlin Rep. Vo. Presc. Nos. 401-5.

In the case of Anding vs. T. & P. Ry. Co., 152 La. 412, 104 South. 190, the defendant was in the first suit the railway company, and the petition and citation were addressed to it and served upon the receivers. Though the railway company did not owe the claim, service upon the receivers, who did not represent the railway, was held sufficient to interrupt prescription of the suit against the receivers, who were third parties, for the reason that the first citation and petition against the railway were served upon the receivers and fully informed them of the nature of the claim asserted by the plaintiff. So in this case the citation and petition were addressed to the minor, Rosenblum, who did not owe the claim, and were served at the domicile of the father, defendant, in this case, and informed him of the nature of plaintiff's claim.

The service upon the receivers was more defective than the service upon the minor in this case, because the receivers did not in any manner represent the railway, and were not liable for its debts; while in the present case the father represented his minor son, C. C. 216-221, and was liable for his offenses.

C. C. 237-2318.

The evidence in the case shows that the petition and citation in the first suit addressed to defendant's son were served at defendant's domicile in the hands of his wife. It is no violent presumption to assume that the father received the petition and citation, and became acquainted with their contents, and that he assisted counsel in the preparation of the answer. The answer in nine paragraphs was filed in the name of the son, as if he was a major. Although the petition alleged that the son was of the age of majority, there was no exception filed that he was a minor nor was it alleged in the answer in so many words that the son was a minor. C. P. 346; 159 La. 526.

There was only a denial of the allegation, contained in the petition, of the majority of the son. Plaintiff overlooked this denial, as well he might, as denials are sometimes made of admitted facts, and because the defendant followed this denial with an elaborate answer upon the merits which he might have avoided by pleading the minority. This alone was very likely to throw plaintiff off his guard. The answer was a Trojan horse which contained within its bowels a mortal enemy. The answer was filed in the name of the minor. Another circumstance calculated to throw plaintiff off of his guard. It was a stumbling block thrown in the path of the blind.

It was only upon the trial of the case upon its merits, more than a year after the accident and after two continuances on the part of the defendant in this case that he testified that his son was a minor. By disclosing this fact he might have put an end to the litigation at once. He cannot take advantage of his silence.

Under these circumstances, I am of the opinion that the defendant cannot avail himself of the plea of prescription.

In the case of Odoberto vs. Virgin, No. 7986 of this court, O. B. 57, this court held:

"Where a party lulls another into the belief that he will suffer no loss by his inaction and thus induces him to refrain from claiming a debt, prescription will not begin to run until the other party is undeceived."

In the case of Stanbrough vs. McCall, 4 La. Ann. 322, the court said on p. 324:

"The rule that he who thus paralizes the right of another shall not benefit by his own act to prescribe against that right, is not peculiar to our own jurisprudence; but as it has its foundation in reason and justice, we find it adopted as a principle of equity in England and in the United States. In Putney vs. Warren, 6 Vesey 73, it was held that where a party applies to a court of equity, and carries on an unfounded litigation, protracted under circumstances and for a length of time which deprives his adversary of his legal rights, the court of equity considers that it should itself supply and administer, within its own jurisdiction, a substitute for that legal right, of which the party so prosecuting an unfounded claim has deprived his adversary." 2 Story Equity 1526.

In the case of Hyman vs. Hibernia Bank et al., 739 La. 411, 71 South. 598, the prescription was held suspended because the defendant continued to pay the rent while the contents were being removed. See also Succn. Gilmore, 157 La. 133, 102 South. 94, 104 Decennial vs. Limitations. McDuffie vs. Walker, 125 La. 153 (167), 51 South 100; 7 Orl. App. 60.

The insurance company referred to by Leo Rosenblum, speaking as a witness, is the Aetna Life Insurance Company, the indemnitor of the present defendant, Hile Rosenblum.

The attorney who represented the minor, Leo Rosenblum, in the first suit is the same who represents the actual defendant.

We must therefore conclude that the Aetna Life Insurance Company was the real defendant in both the suits against the minor and in the one against his father, the present defendant, and is therefore responsible for the pleadings in both cases. The insurance company must therefore be held for its failure to plead the minority of of Leo Rosenblum specially and in so many words and for its action in filing an answer in the name of the minor, as if he was sui juris. If it was wrong so to do, then the insurance company cannot take advantage of its own wrong; and I am of the opinion that it committed an error and was wrong in so doing.

In the Hibernia Bank case the court said:

"Where a bank and its debtor, successor of another company, paid rent for the premises leased by such other company to ·lull the landlord into a false security and keep him from discovering that they were removing from the premises goods subject to lessor's right of pledge and his privilege, the prescriptive period of limitation to the landlord's action for the tort committed ᴜpon' him began to run from the date of the last payment of rent, since one who by some act succeeds in concealing from a creditor his cause of action cannot be allowed to reap the benefit of his own wrong." Hyman vs. Hibernia Bank, 139 La. 412, 71 South. 598. Affirmed in Bernstein vs. Bank, 161 La. —, 108 South. 126.

In that case the syllabus reads:

"Concealing from plaintiff libelous letter held to suspend statute of limitations."

See also Eureka Homestead vs. Sladovich, 161 La. —, 108 South. 477, where it was held that it 'was a fraud for a minor to represent himself as of age.

So in the present case this defendant. by concealing the fact of his son's minority when he should have spoken, and by authorizing an answer in his minor son's name, as if he was a major, lulled the plaintiff into a false security of his right of action and "cannot be allowed to reap the benefit of his own wrong". As to ·him, prescription began to run only from the date he testified his son was a minor.

For the above reasons I respectfully dissent, and I am of the opinion that the exception of prescription should be overruled and the case remanded for trial upon the merits.